IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES EDWARD HEWITT, | ) | CASE NO. 1:11-CV-2682 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | REPORT & RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the undersigned pursuant to Local Rule 72.2(b).  The issue before the Court is whether the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying Plaintiff Charles Hewitt's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons stated herein, the undersigned recommends the decision of the Commissioner be VACATED.

I.  INTRODUCTION & PROCEDURAL HISTORY

On May 19, 2006, Plaintiff Charles Hewitt ("Plaintiff" or "Hewitt") protectively filed applications for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 132-37).  Plaintiff alleged he became disabled on February 28, 2004, due to suffering from adult attention deficit hyperactivity disorder ("ADHD"), depression, anxiety and problems with his eyes.  (Tr. 171).  Hewitt's Disability Insurance benefits expired on June 30, 2009.  (Tr. 226).  The Social Security Administration denied Plaintiff's applications

initially and upon reconsideration.  (Tr. 36-39).  Thereafter, Hewitt requested a hearing before an administrative law judge to contest the denial of his applications.  (Tr. 67).  The administration granted Hewitt's request and scheduled a hearing.  (Tr. 68-69).

On November 14, 2008, Administrative Law Judge Deborah Arnold (the "ALJ") convened a hearing via video to evaluate Plaintiff's applications.  (Tr. 21-35).  Plaintiff's counsel appeared at the proceeding, however, Hewitt failed to appear.  (*Id*.).  Therefore, counsel presented evidence to the ALJ regarding the extent of Plaintiff's impairments.  (*Id*.).  The ALJ also heard testimony from a vocational expert, Mr. Thomas Nimberger.  (*Id*.).  At the conclusion of the hearing, the ALJ advised counsel that she would issue an order to Plaintiff directing him to show cause for his failure to appear at the hearing in order to determine whether she should hold a supplemental hearing. (Tr. 35).

On November 15, 2008, the ALJ issued such notice to Hewitt.  The notice ordered Plaintiff to mail such statement to the ALJ no later than December 10, 2008.  (*Id*.).  The ALJ admonished Plaintiff that she would schedule a supplemental hearing upon a showing of good cause.  (*Id*.).  However, the ALJ did not receive a timely response from Plaintiff.  (Tr. 13).  Instead, on December 31, 2008, Hewitt appeared at one of the administration's local hearing offices requesting an extension in his time in which to show good cause.  (*Id*.; Tr. 103).  Subsequently, on January 21, 2009, Plaintiff's attorney faxed a letter to the ALJ, attempting to proffer good cause for Plaintiff's failure to appear at the hearing.  (Doc. 11, Ex. 1).  Enclosed with the letter was an affidavit from Plaintiff indicating that he did arrive at the correct location on the date of the hearing, but was 20 minutes late because he did not have the assistance of his caseworker and became lost and confused trying to locate the correct hearing office.  (*Id*.).

On March 11, 2009, the ALJ issued her decision denying Plaintiff's applications for benefits. (Tr. 13-20). In her written opinion, the ALJ explained Hewitt had failed to show good cause for his failure to appear at the hearing, and therefore the ALJ declined to schedule a supplemental hearing. (Tr. 13). Following this ruling, Hewitt sought review of the ALJ's decision from the Appeals Council. (Tr. 8). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.[1] (Tr. 1-3). Plaintiff now seeks to appeal the ALJ's decision. Judicial review is proper pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL & MEDICAL EVIDENCE[2]

Hewitt, born on May 17, 1959, was 44 years old on his alleged onset date. Accordingly, Plaintiff was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). He completed the 12th grade and has past experience working as a forklift operator (machinist), tow motor operator and pot washer. (Tr. 28-29, 157). Plaintiff lives with his three sons, each of whom suffer from ADHD and receive disability benefits. (Tr. 24, 139).

Plaintiff has a documented history of suffering from ADHD, depression and anxiety. Plaintiff began receiving treatment from Dr. Brahmaiah Tandra in August 2004. (Tr. 396). Dr. Tandra diagnosed Hewitt with major depressive disorder, ADHD and alcohol dependence in full remission. (*Id.*). The doctor also assessed Plaintiff's global assessment of functioning ("GAF")

---

[1] Hewitt contends that while his appeal was pending before the Appeals Council he reapplied for benefits alleging an onset date of March 12, 2009, the date following the ALJ's denial. (Pl.'s Br. at 3, n. 3). Plaintiff asserts this application was approved. (*Id.*).

[2] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record. Additionally, because Parts 404 and 416 of the Code of Federal Regulations are parallel, the undersigned will only cite to Part 404.

score as falling between 45 and 50. (*Id*.). On August 15, 2005, Dr. Tandra completed a medical statement on Plaintiff's behalf for the Bureau of Disability Determination. (Tr. 396-99). As of this date, Dr. Tandra diagnosed Hewitt with dysthymic disorder and a GAF score of 61. (Tr. 398-99). In the report, Dr. Tandra indicated Plaintiff had been diagnosed with attention deficit disorder ("ADD") and ADHD since childhood. (Tr. 397). Dr. Tandra also reported Plaintiff had difficulties with concentration and memory and was not able to focus on tasks for long periods of time. (*Id*.). Additionally, Dr. Tandra found Hewitt was compliant with his medication and that it had been working well for the past six to eight months. (Tr. 398). However, the doctor opined that despite his use of medication, Plaintiff was unable to work because he experienced "constant feelings of being overwhelmed". (*Id*.).

On January 11, 2005, Dr. Kenneth Felker conducted a consultative mental status examination on Hewitt. (Tr. 366-69). Dr. Felker described Plaintiff's level of motivation as poor, and his mood and affect as depressed and anxious. (Tr. 367). The doctor diagnosed Hewitt with depression and ADD. (Tr. 368). Based on his examination, Dr. Felker opined Plaintiff's ability to concentrate was moderately impaired, although Plaintiff's ability to carry out tasks was only judged to be mildly to moderately restricted, and the doctor noted no problems with Hewitt's ability to understand and follow instructions. (*Id*.). Dr. Felker further noted Plaintiff was restricted by a mild to moderate impairment with dealing with the general public, but his ability to relate to peers and supervisors or deal with employment stressors was moderately to seriously impaired. (*Id*.). Thus, Dr. Felker concluded, "[t]he combination of depression, anxiety symptoms and attention deficit disorder are factors, which restrict [Hewitt's] employability." (*Id*.). The doctor assessed Plaintiff's GAF score at 52, "showing [a] moderate to serious restriction in [Hewitt's] occupational functioning." (Tr. 369).

On February 3, 2005, Dr. Karen Stailey, a state agency reviewer, assessed Plaintiff's mental residual functional capacity.  (Tr. 284-86).  Dr. Stailey noted Hewitt had a history of depression and had been having difficulty for the past one and a half years due to his wife leaving him and being a single parent of three children.  (Tr. 286).  Dr. Stailey opined Hewitt retained the ability to "understand, remember, and carry out one to two step tasks . . . . [and] adapt to changes in the work environment that are routine and easily explainable."  (*Id*.).  She also found he was able to "relate superficially to familiar others."  (*Id*.).

On August 11, 2005, Plaintiff presented to Dr. Herschel Pickholtz, a psychologist, for a consultative examination.  (Tr. 400-05).  Dr. Pickholtz observed Plaintiff's affect and mood to be within normal range.  (Tr. 402).  The doctor did not notice any severe signs of anxiety.  (*Id*.).  Dr. Pickholtz diagnosed Hewitt with adjustment reaction with depression and anxiety, alcohol dependency (allegedly in remission), ADD and mixed personality with narcissistic and addictive personality features.  (Tr. 404-05).  He also rated Plaintiff's GAF score between 65 and 70 at worst, based upon Plaintiff's ability to care for himself and his three children.  (Tr. 405).  Additionally, Dr. Pickholtz opined Plaintiff suffered from no more than mild limitations in his ability to attend to and comprehend work activities and handle the pace, consistency, stresses and pressures of daily work.  (*Id*.).  The doctor further noted Plaintiff's ability to work with others fell "within the low average range at worst."  (*Id*.).  Dr. Pickholtz also indicated Plaintiff's problems with attention and concentration seemed to be related to his split from his wife and allegations of abuse on his children.  (Tr. 404).

On September 19, 2005, Dr. Jennifer Swain, a state agency reviewer, completed a Psychiatric Review Technique evaluation assessing Hewitt's mental health.  (Tr. 370-82).  Dr. Swain noted Plaintiff suffered from ADD, adjustment reaction with some depression and anxiety

and alcohol dependency allegedly in remission. (Tr. 370-78). Additionally, Dr. Swain concluded Plaintiff only suffered from a mild limitation in performing activities of daily living and maintaining social functioning, and a moderate limitation in maintaining concentration, persistence and pace. (Tr. 380). She also ruled Plaintiff had not suffered from any episodes of decompensation. (*Id.*).

In July 2006, Plaintiff began to receive psychiatric treatment from Dr. Michael Primc. (Tr. 317). Dr. Primc diagnosed Hewitt with major depressive episode (recurrent), ADD and chronic mood symptoms related to external stress. (*Id.*). During the examination, Dr. Primc observed Plaintiff to be "[p]leasant, talkative, [and] somewhat restless" and noted Hewitt experienced "some anxiety and dysphoria." (*Id.*). Dr. Primc's notes reflect that Hewitt had to quit his job in order to raise his three children and that Hewitt feared he would suffer a nervous breakdown. (*Id.*). However, Plaintiff admitted his medication helped improve his symptoms, though they made him irritable and caused mood swings. (*Id.*). In response, Dr. Primc lowered Plaintiff's prescription dosage. (*Id.*).

On August 21, 2006, Dr. Stailey-Steiger[3] re-evaluated Plaintiff's mental residual functional capacity. (Tr. 278-83). She acknowledged Hewitt's diagnosis of major depressive disorder, ADHD, dependent personality traits and alcohol dependence in full remission. (Tr. 283). Yet, based on her review of the record, including Plaintiff's ability to care for three children, lack of psychiatric hospitalizations, fair insight and judgment and favorable response to medication, she concluded Plaintiff was capable of working. (*Id.*). Dr. Stailey-Steiger opined Plaintiff could perform "simple, repetitive tasks in a work environment w[ith] few changes and

---

[3] Dr. Stailey-Steiger and Dr. Stailey referenced earlier are the same person. It appears Dr. Stailey changed her name some time after she issued her report in February 2005.

6

no strict productions quotas." (*Id*.). She further found Hewitt could "interact w[ith] others on at least a superficial level for simple, repetitive tasks." (*Id*.).

Finally, on January 10, 2007, Dr. Primc completed a "Work Ability Form" expressing his view of Plaintiff's ability to perform various work activities. (Tr. 508-09). Dr. Primc indicated Hewitt had a low tolerance for conflict or changes in his work environment. (Tr. 509). He also stated Plaintiff experienced chronic difficulty with concentrating due to suffering from ADD. (*Id*.). Accordingly, Dr. Primc noted it was "highly unlikely" Plaintiff would be able to sustain full-time employment. (*Id*.). When asked how much time Hewitt would be "off-task" each work day, Dr. Primc responded that Plaintiff "would likely require frequent supervision to ensure work compliance." (*Id*.).

### III. ALJ'S RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the sequential analysis,[4] the ALJ determined Hewitt had not engaged in substantial gainful

---

[4] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

activity since his alleged onset date of February 28, 2004. (Tr. 15). At step two, the ALJ held Plaintiff suffered from the following severe impairments: depression, anxiety and a history alcohol abuse. (Tr. 16). But, at step three, the ALJ ruled that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). Before moving to the next step, the ALJ assessed Plaintiff's residual functional capacity ("RFC") to work. (Tr. 17-19). The ALJ found Hewitt retained the ability to perform work at each of the physical exertion levels, but was limited to "simple, repetitive tasks with only superficial interaction with others." (Tr. 17). However, because Plaintiff's prior jobs required a greater RFC than that which Hewitt currently possessed, at step four, the ALJ ruled Hewitt could not return to any of his past work. (Tr. 18-19). Notwithstanding, the ALJ determined Plaintiff's RFC permitted him to perform other jobs existing in significant numbers in the national economy. (Tr. 19-20). Therefore, the ALJ ruled Plaintiff was not disabled. (*Id*.).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

---

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff asserts a number of challenges to the ALJ's decision. Hewitt's first assignment of error contends the ALJ improperly evaluated the opinions of his treating physicians. Next, Plaintiff attacks the ALJ's determination at step two of the analysis by arguing the ALJ failed to label certain of his impairments as severe. Because of this failure, Hewitt next contends the ALJ's RFC lacks substantial support in the record. Plaintiff's fourth assignment of error challenges the weight the ALJ assigned to the medical opinions issued by the non-treating sources of record. Finally, Hewitt argues the ALJ committed an error of law and abused her discretion when she found Hewitt had not shown good cause for his failure to attend the hearing, and failed to conduct a supplemental hearing. Because Plaintiff's first assignment of error warrants remand, it is not necessary to address Plaintiff's remaining claims.

It is well-recognized that an ALJ must give special attention to the findings of a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2).[5] The treating source doctrine indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

---

[5]Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations were amended. Paragraph (d) of each section was redesignated as paragraph (c). *See* 77 F.R. 10651-01, 2011 WL 7404303.

Even when a treating source's opinion is not entitled to controlling weight, the ALJ must still determine how much weight to give to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. § 404.1527(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinion.  20 C.F.R. § 404.1527(c)(2).  An ALJ's failure to adhere to this doctrine generally necessitates remand.  *Wilson*, 378 F.3d at 545.  The Sixth Circuit has admonished that "[w]e will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (*quoting Wilson*, 378 F.3d at 543-46).

Yet, *Wilson* noted there were instances where a *de minimis* violation of the "good reasons" rule could be harmless.  For example, it held remand is not necessary where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation."[6]  *Wilson*, 378 F.3d at 547.  Therefore, so long as the ALJ's opinion "permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."  *Friend*, 375 F. App'x at 551.

The ALJ's evaluation of Drs. Tandra's and Primc's opinions did not meet the requirements of the treating source rule.  The Court notes that neither the ALJ nor the

---

[6] *See* n. 5, *supra*.

Commissioner contested either doctor's status as Plaintiff's treating physician. Thus, the treating source doctrine applies. Although the ALJ acknowledged Plaintiff's treatment with both doctors, the ALJ failed to explain what weight she assigned to either doctor's opinion, or the reasons for that weight. With regard to Dr. Tandra, the ALJ made reference to several of the doctor's treatment notes from Hewitt's office visits between 2004 and 2006. (Tr. 18). The treatment notes identified generally showed Plaintiff was in "good spirits" and was doing well. However, Plaintiff notes that in August 2005, Dr. Tandra expressed concerns regarding his mental well-being in a statement issued to the Bureau of Disability Determination. In this report, Dr. Tandra stated Hewitt required frequent redirecting and had a low attention span. Although the doctor found Plaintiff's medications helped to control his symptoms, the doctor opined Plaintiff could not work because the medication was not enough to manage Plaintiff's "constant feelings of being overwhelmed". (Tr. 398).

The ALJ did not acknowledge this report, nor did the ALJ provide any indication of how she weighed Dr. Tandra's opinion. It is clear that the ALJ did not assign controlling weight to Dr Tandra's opinions stated within the report the doctor issued in August 2005. Had the ALJ done so, she would have concluded Plaintiff was not capable of working in accordance with Dr. Tandra's findings. The ALJ's failure to expressly indicate the weight given to Dr. Tandra's opinions and her subsequent failure to provide *any* reason, albeit good or bad, for the weight assigned violates the treating physician rule. *See Wilson*, 378 F.3d at 543-45. The fact is, the ALJ's opinion provides no insight into how she evaluated Dr. Tandra's findings.

Similarly, the ALJ's examination of Dr. Primc's opinion was also faulty. The ALJ appeared to follow the first step of the treating source rule by identifying whether Dr. Primc's opinion was entitled to controlling weight. The ALJ acknowledged Dr. Primc's findings that

Hewitt had a low tolerance for conflict and would likely require frequent supervision, but found these conclusions were inconsistent with the doctor's progress notes. Thus, the ALJ provided some explanation as to why Dr. Primc's opinion was not entitled to controlling weight. But, the ALJ did not fulfill the second part of the rule, which requires the ALJ to list good reasons for the weight actually attributed to the doctor's opinion. The ALJ's conclusion that Dr. Primc's opinion was inconsistent with other substantial evidence in the record did not end the ALJ's inquiry. *Friend*, 375 F. App'x at 551 ("[E]ven when an ALJ *correctly* reaches a determination that a treating source's medical opinion is inconsistent with the other substantial evidence in the record, such a determination 'means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.'") (emphasis is original). Given Dr. Primc's status as Hewitt's treating physician, his opinion was entitled to deference, and the ALJ had a duty to explain why he credited the opinions of the non-treating sources over that of Dr. Primc. *Id*. at 551-52.

      The ALJ's errors here cannot be construed as harmless under *Wilson*. Neither Dr. Tandra's nor Dr. Primc's findings were so patently deficient that the ALJ could not possibly credit them. The ALJ made much of the fact that both doctor's treatment notes consistently referenced issues Plaintiff was experiencing due to his divorce and child custody proceedings. Yet, despite the problems Hewitt faced in his personal life, none of the medical sources of record appeared to question the legitimacy of Hewitt's problems with depression, anxiety and/or ADD or ADHD. Therefore, the undersigned cannot decipher why or how Drs. Tandra's or Primc's notation of these issues tainted their medical opinions regarding Plaintiff's mental health. Regardless, neither the ALJ, nor the Commissioner, identified anything in either doctor's opinion which would entitle the ALJ to outright disregard it as patently deficient.

13

Nor does the Court find that the ALJ's opinion was consistent with the doctors' findings. Both Dr. Tandra and Dr. Primc doubted Hewitt's ability to work, and expressed that Plaintiff would require frequent supervision and redirection.[7] The ALJ's RFC is not reflective of these findings. Neither does the ALJ's opinion meet the goal of "good reasons" requirement, though falling short of the terms prescribed in § 1527(c)(2). The ALJ's discussion of the other medical opinion evidence does little to explain why the ALJ viewed Drs. Tandra's and Primc's opinions less favorably than the other medical opinion evidence. In fact, the ALJ's discussion of Dr. Felker's opinion is somewhat skewed as the ALJ failed to address many of Dr. Felker's opinions which align with Drs. Tandra's and Primc's findings and support Plaintiff's request for benefits. Consequently, because the ALJ's evaluation of Hewitt's treating sources' opinions was erroneous and amounted to more than harmless error, remand is necessary in order for the ALJ to reassess this evidence. Plaintiff will now have another opportunity to present his case to the ALJ.

---

[7] Although the doctors' opinions that Plaintiff could not work were opinions on an issue reserved to the Commissioner, the ALJ was still bound to consider them and the doctor's other opinions and explain why they were not credited. 20 C.F.R. § 404.1527(d)(1); *see Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475-76 (6th Cir. 2008).

VII. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court recommends the decision of the Commissioner be VACATED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

                                                          s/ Kenneth S. McHargh
                                                          Kenneth S. McHargh
                                                          United States Magistrate Judge

Date: November 16, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).